* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Houser. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At the time of the alleged injury by accident, an employer-employee relationship existed between plaintiff and defendant.
3. On all relevant dates, North Carolina Farm Bureau Insurance Companies was the carrier on the risk.
4. Plaintiff's average weekly wage is contested.
5. At and subsequent to the hearing, the parties submitted a Notebook of Stipulated Exhibits, which was admitted into the record, and marked as Stipulated Exhibit (2), and a Surveillance Video, which was admitted into the record, and marked as Stipulated Exhibit (3).
6. The issues to be determined are as follows:
 a. whether plaintiff sustained an compensable injury by accident, and if so, to what, if any, indemnity or medical compensation is he entitled;
 b. whether plaintiff gave proper notice of his alleged injury by accident pursuant to the terms of N.C. Gen. Stat. § 97-22, and if not, whether he is barred from receiving compensation, and;
 c. whether plaintiff's current condition is causally related to his alleged injury by accident.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Full Commission, plaintiff was fifty-six (56) years of age, with his date of birth being 22 December 1949. Plaintiff is a high school graduate. Plaintiff's employment history includes jobs in a chemical plant, in a textile mill and as a sheet rock finisher.
2. In the early 1990s, plaintiff injured his back during a period of incarceration while lifting weights. Following this injury, plaintiff underwent an MRI of the lumbar spine and received as epidural injections. At the hearing, plaintiff testified that upon being released from prison, his back was pain free. Additionally, plaintiff testified that between 1994 and September 5, 2003, he sustained no other injuries to his back and had not sought medical treatment for his back.
3. Prior to the incident giving rise to this claim, plaintiff previously worked for defendant in 2001 and from November 2002 to January 2003. Thereafter, plaintiff worked in New York before returning to the Lumberton, North Carolina. In September 2003, plaintiff contacted defendant seeking work. During the conversation between plaintiff and defendant, plaintiff informed defendant that he had injured his back while working in New York, but that he needed to work. Defendant considered plaintiff to be a friend and offered him employment.
4. Plaintiff contends he was hired in September 2003 as a sheetrock finisher at a rate of pay of $100.00 per day, for five days per week. Defendants contend that plaintiff was hired as a general laborer who would put out and pick up drop cords and tools and mix drywall mud. In that capacity, defendant further contends that plaintiff's normal rate of pay would be $50.00 per day, but that defendant-employer paid plaintiff $100.00 per day because he felt sorry for plaintiff given his financial and life situation.
5. On September 5, 2003, plaintiff contends that he was working with Steve Oxendine's crew at an apartment complex near Surfside Beach that was under construction. According to plaintiff, because no apartment had any drywall mud, he went to retrieve some and found a bucket of drywall mud lying in some sand. Plaintiff further contends that he grabbed and picked up the bucket, and went to turn his foot when his foot spun in the sand, causing him to wrench his back. Plaintiff further contends that when this occurred he experienced the immediate onset of pain in his lower back. Following this incident, plaintiff testified that he carried the bucket to a co-worker, Mr. David Jacobs, and requested that he take the bucket up a flight of stairs to Mr. Steve Oxendine. Instead, according to plaintiff, Mr. Steve Oxendine met plaintiff at the bottom of the stairs and plaintiff handed the mud bucket to him. Plaintiff admitted during his testimony that he did not report any back injury to Mr. Oxendine or Mr. Jacobs.
6. Contrary to plaintiff's allegations, Mr. Steve Oxendine and Mr. Brad Oxendine, who are not related, testified that on September 5, 2005, the crew performed drywall finishing work at the Ravenwood office building between Myrtle Beach and Georgetown, South Carolina. Both Mr. Steve Oxendine and Mr. Bradley Oxendine testified with specificity about the Ravenwood jobsite. This specificity included the fact that the Ravenwood building is a one-story warehouse with no stairs and that there is no sand around the building. Mr. Bradley Oxendine further testified that plaintiff did not report sustaining any back injury at the Ravenwood job site or at any other time on September 5, 2003. Mr. Bradley Oxendine testified that he knew of plaintiff's prior back injury in New York and that because of that injury, plaintiff did not lift drywall mud buckets. Mr. Steve Oxendine testified that he did not receive any drywall mud from plaintiff or anyone else on September 5, 2003. At the time of hearing before the deputy commissioner, Mr. Bradley Oxendine was no longer employed by defendant.
7. Following this alleged incident, plaintiff contends that he worked the remainder of the day in pain. On Monday, September 8, 2003, plaintiff reported to work and worked a full day, as he also did on September 9, 2003 and September 10, 2003. On September 11, 2003, plaintiff reported to Southeastern Regional Medical Center in Lumberton with complaints of pain as a result of a pinched nerve. According to the medical records from that date, plaintiff walked into that facility with the use of a metal cane. These records also indicate that plaintiff did report an incident during which he picked up a bucket "wrong" but that his pain had arisen gradually with "no acute trauma." Additionally, these medical records indicate that plaintiff reported that his back pain on September 11, 2003 was identical to back pain he had previously experienced. The attending physician at Southeastern diagnosed plaintiff as having sciatica and prescribed fifteen (15) Vicodin for his pain. Plaintiff was provided pain medication and told to follow up with an orthopaedic if his pain persisted.
8. At the hearing, Mr. Steve Oxendine testified that on September 11, 2003 he received a telephone call from Southeastern Regional Medical Center inquiring into his worker's compensation coverage. Mr. Steve Oxendine further testified that during this call, he was informed that plaintiff was alleging a work related injury.
9. On September 12, 2005, plaintiff traveled to the home of Mr. Steve Oxendine to pick up his paycheck. According to plaintiff, upon arriving at Mr. Steve Oxendine's home, Mr. Steve Oxendine instructed plaintiff to retrieve his tools from the work truck. Plaintiff further testified that he interpreted this interaction to mean that he had been terminated.
10. Plaintiff returned to Southeastern Regional Medical Center on September 15, 2003. Medical records from that date indicate that plaintiff reported experiencing back pain having been injured while picking up a bucket of mud. Plaintiff again returned to Southeastern Regional Medical Center on September 19, 2003, and records from that date indicate that he reported back pain and having strained his back while picking up a bucket of mud on September 5, 2003.
11. Upon the referral from Southeastern Regional Medical Center, plaintiff sought treatment at A.J. Robinson medical clinic on September 22, 2003. On that date, plaintiff reported experiencing lumbar pain and having twisted his back while carrying a bucket of mud when he stepped in water and lost his balance. On October 6, 2003, plaintiff returned to the Robinson Clinic for additional treatment of his back pain. Records from that date indicate that plaintiff reported to Shannon Evans, PA-C that his injury was an old one that had actually occurred approximately ten years (10) prior that had flared up. Following an examination, Ms. Evans noted that plaintiff exhibited malingering drug seeking behavior. Ms. Evans further noted that her examination of plaintiff revealed no evidence of any neurological impairment.
12. In October 2003, prior to being examined by Dr. David R. Allen, Jr., plaintiff was a passenger in a motor vehicle that was involved in an accident on Highway 301 between North and South Carolina. The vehicle in which plaintiff was riding was struck on the driver's side.
13. On October 27, 2003, plaintiff sought treatment from Dr. Allen, an orthopaedic surgeon. Plaintiff reported to Dr. Allen that his low back and left hip pain began on September 5, 2003. Following an examination, Dr. Allen diagnosed plaintiff as having low back pain and lumbar degenerative disc disease. Dr. Allen recommended that plaintiff undergo a lumbar spine MRI and return upon its completion and released plaintiff to return to work without restrictions.
14. On November 11, 2003, plaintiff underwent a lumbar spine MRI, the results of which revealed stenosis at the L3-4 and L4-5 levels, a midline and left paramedian disc protrusion at the L5-S1 level with impingement of the S1 nerve root on the left side. Dr. Allen thereafter referred plaintiff Dr. Charles Stevenson Haworth, a neurosurgeon, for possible surgery.
15. Dr. Haworth first examined plaintiff on March 26, 2004, after which he recommended that plaintiff undergo a left L5-S1 microdiscectomy to treat his low back condition. On June 9, 2004, Dr. Haworth performed a left L5-S1 partial laminectomy and microdiscectomy on plaintiff. On September 17, 2004, Dr. Haworth noted that as of that date, he could not find anything objectively wrong with plaintiff and released plaintiff from his care.
16. Based upon the totality of the credible evidence of record, the undersigned give greater weight to the testimony of Mr. Steve Oxendine and Mr. Brad Oxendine than the testimony of plaintiff regarding the circumstances and occurrences on September 5, 2003. Additionally, the undersigned find that the incident causing plaintiff's back problems which are the subject of this claim, most likely occurred in New York prior to September 5, 2003. Moreover, the undersigned find as credible defendants' assertion that plaintiff reported no injury to anyone associated with defendant on September 5, 2003 and that plaintiff refused Mr. Steve Oxendine's offer on that date regarding medical treatment for his previously occurring back injury.
17. The causation opinions of Dr. Haworth and Dr. Allen are given no weight by the undersigned given that their opinions were based on the inaccurate factual basis given to them by plaintiff.
18. Based upon the credible lay and medical evidence of record, plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant in the form of a specific traumatic incident or otherwise on September 5, 2003. Additionally, any disability or inability to earn wages subsequent to that date was unrelated to any compensable workplace incident.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant in the form of a specific traumatic incident or otherwise on September 5, 2003. N.C. Gen. Stat. § 97-2(6).
2. Because plaintiff did not sustain a compensable injury by accident and his back condition is unrelated to any injury while working for defendant, he is not entitled to indemnity or medical compensation. N.C. Gen. Stat. §§ 97-2(9); 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim is hereby DENIED.
2. Each side shall pay its own costs.
This the 16th day of November, 2006.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER